IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ROBERT STRONG,<br>4755 Bado<br>Cabool, MO 65689<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA<br>Serve:<br>Attorney General of the United States<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br><br>Tammy Dickinson<br>Acting United States Attorney<br>80 Lafayette Street, Suite 2100<br>Jefferson City, MO 65101<br><br>Robert A. McDonald<br>Secretary, United States<br>Department of Veterans Affairs<br>810 Vermont Avenue, NW<br>Washington, DC 20420<br><br>and<br><br>LANDMARK HOSPITAL OF<br>COLUMBIA, LLC<br>Serve Registered Agent:<br>A. Fuller Glaser, Jr.<br>222 Litcheford Court<br>St. Louis, MO 63141<br><br>and<br><br>LANDMARK MANAGEMENT<br>SERVICES, LLC<br>Serve Registered Agent:<br>A. Fuller Glaser, Jr.<br>222 Litcheford Court<br>St. Louis, MO 63141 | Case No.<br><br>Federal Tort Claims Act<br><br>JURY TRIAL DEMANDED FOR:<br><br>COUNT II – MEDICAL NEGLIGENCE<br>v. DEFENDANTS LANDMARK<br>HOSPITAL OF COLUMBIA, LLC AND<br>LANDMARK MANAGEMENT<br>SERVICES, LLC<br><br>and<br><br>COUNT III – MEDICAL NEGLIGENCE<br>v. VAMSI P. GUNTUR, M.D. |

1

**and**

**VAMSI P. GUNTUR, M.D.**
Serve at:
604 Old Highway 63
Columbia, MO 65201

        **Defendant(s).**

## COMPLAINT

The Plaintiff, by and through counsel, for his causes of action against the Defendant(s), alleges and states as follows:

### PLAINTIFF

1. Plaintiff Robert Strong, is, and at all times relevant hereto was, a citizen and resident of the State of Missouri.

### DEFENDANTS

2. Defendant United States of America ("USA") is a government entity which has medical facilities throughout the United States and, in particular, the Harry S. Truman Memorial Veteran's Hospital ("VA") located at 800 Hospital Drive, Columbia, MO 65201.

3. Plaintiff's Complaint involves medical care and treatment provided to Plaintiff at the VA located in Columbia, Missouri within the Western District of Missouri.

4. This is a claim under the Federal Tort Claims Act ("FTCA"), pursuant to 28 U.S.C. §1346(b) and 28 U.S.C. §2671 et seq. for damages sustained by Plaintiff.

5. At the time of the negligent acts and occurrences complained of herein and at all other times relevant hereto, Defendant Landmark Hospital of Columbia, LLC ("Landmark") was a Missouri limited liability company duly organized and existing under Missouri law and engaged in providing ancillary medical services to persons requiring such services, including Plaintiff Robert Strong.

2

6. At the time of the negligent acts and occurrences complained of herein and at all other times relevant hereto Defendant Landmark Management Services, LLC ("LMS") was and is a Missouri limited liability company in good standing with the capacity to sue and be sued in its own name. At all pertinent times, Defendant LMS had a contract with Defendant Landmark to provide managerial, operational and financial support services. At all times pertinent hereto, Defendant LMS was operated and managed by and through its agents, apparent agents, servants and employees, all of whom were working and acting in the scope and course of their employment for Defendant LMS.

7. At the time of the negligent acts and occurrences complained of herein and at all other times relevant hereto, Defendant Vamsi P. Guntur, M.D. ("Dr. Guntur") was a licensed physician, representing and holding himself out to the public, and in particular to Plaintiff as a specialist in internal medicine, pulmonary disease, and critical care medicine and was employed by Defendants Landmark and LMS.

## AGENCY

8. At the time of the incidents referred to herein the health care providers at the VA who rendered treatment to Plaintiff, including all nurses, licensed practical nurses, certified nurse aides, assistants, technicians, attendants, or other health care providers were the agents, actual or ostensible, of Defendant USA, through the VA, and were acting in the scope and course of their employment with Defendant USA. Accordingly, all negligent acts of the VA's agents or employees are imputed to their employer/principle Defendant USA.

9. At the time of the incidents referred to herein the health care providers at Defendant Landmark who rendered treatment to Plaintiff, including all nurses, licensed practical nurses, certified nurse aides, assistants, technicians, attendants, or other health care providers

3

were the agents, actual or ostensible, of Defendant Landmark and were acting in the scope and course of their employment with Defendant Landmark. Accordingly, all negligent acts of Defendant Landmark's agents or employees are imputed to their employer/principle Defendant Landmark.

10. At the time of the incidents referred to herein Defendant Dr. Guntur was the agent, actual or ostensible, of Defendants Landmark and LMS and was acting in the scope and course of his employment with Defendants Landmark and LMS. Accordingly, all negligent acts of Defendant Dr. Guntur, are imputed to his employers/principles Defendants Landmark and LMS.

## JURISDICTION & VENUE

11. Plaintiff alleges that the VA's employees and agents, acting within the course and scope of their employment for Defendant USA, through the VA, negligently and carelessly treated Plaintiff causing personal injury and damages as more fully set forth hereinafter.

12. On December 5, 2014, Plaintiff served a Federal Tort Claim to the Harry S. Truman Memorial Veteran's Hospital and the VA Regional Counsel. A copy of Plaintiff's Federal Tort Claim is attached to this Complaint as Exhibit 1 and is incorporated herein by reference.

13. On June 2, 2015, the Department of Veterans Affairs issued a letter stating that Plaintiff's Federal Tort Claim was denied.

14. As such, Plaintiff's Complaint has been filed within the six months after receiving the denial in compliance with the Federal Tort Claims Act 28 U.S.C. §§ 2401(b) and 2675(a).

15. Jurisdiction of this Court is founded on the provisions of 28 U.S.C. §1346(b) and 28 U.S.C. §2671 et seq.

4

16. Plaintiff also alleges that the employees and agents of Defendant Landmark and Defendant LMS, including Defendant Dr. Guntur, while acting within the course and scope of their employment with Defendants Landmark and Defendant LMS, negligently and carelessly treated Plaintiff causing personal injury and damages as more fully set forth hereinafter.

17. As described in more detail in the "Facts of the Occurrence" section of this Complaint below, the Plaintiff's claims against Defendants Landmark, LMS, and Dr. Guntur arise out of the same case and controversy as the Plaintiff's claims against Defendant USA.

18. As such, this Court has supplemental jurisdiction over Plaintiff's claims against Defendant Landmark, LMS, and Dr. Guntur pursuant to 28 U.S.C. § 1367(a).

19. Defendant USA owns and operates the VA, was engaged in providing medical services to persons requiring such services, including Plaintiff, at the VA located in Columbia, Boone County, Missouri.

20. Defendants Landmark and LMS are Missouri limited liability companies and own and operate the Landmark Hospital, located in Columbia, Boone County, Missouri, which was engaged in providing medical services to persons requiring such services, including Plaintiff.

21. Defendant Dr. Guntur rendered his treatment to Plaintiff, as alleged in more detail below, at Landmark Hospital, located in Columbia, Boone County, Missouri.

As such, this Court is the proper venue for Plaintiff's claims against Defendants USA, Landmark, LMS, and Dr. Guntur.

## FACTS OF THE OCCURRENCE

22. As of October 2013, Plaintiff was a 52-year-old with a medical history significant for diabetes, obesity, and hypertension.

5

23. On October 31, 2013, the Plaintiff was admitted to the intensive care unit at the VA in Columbia, Missouri. Plaintiff was intubated to protect his airway and also had rhabdomyolysis, acute anuric renal failure and suspected pneumonia and required continuous IV sedation for agitation.

24. At the time of his admission, Plaintiff's Braden Score was 14 and he did not have any skin breakdown or rash.

25. On November 2, 2013, the Plaintiff was discovered to have a reddened area developing on his right buttock cheek and gluteal fold. Plaintiff's Braden Score was 12 and the Plaintiff was on a bariatric hospital bed.

26. On November 3rd, the Plaintiff's kidney function continued to deteriorate and he was placed on SLED dialysis.

27. On November 4, 2013, the Plaintiff's Braden Score was 11. At that time, the wound nurse on staff recommended that Plaintiff receive a Hill-Rom total support bed with a continuous turning option. The Plaintiff received a Hill-Rom total support bed, however, the continuous turning option and LAL functions did not work.

28. By November 8, 2013, the Plaintiff's reddened area on the right buttock check and gluteal fold had progressed to an 8 cm x 7 cm irregular shaped pressure ulcer with mostly brown eschar and partial open macerated bleeding deep in the gluteal fold.

29. During this time, Plaintiff had received a Zassi stool collector to divert fecal matter from the Plaintiff's wound. Despite this attempt, it was noted on several occasions during wound dressing changes that the Plaintiff's wound was soiled.

30. On November 9, 2013, the VA nurse discussed with the Plaintiff's physician as to whether the Zassi stool collector could be removed due to its ineffectiveness.

6

31. On November 11, 2013 nursing staff noted continuing problems with the Hill-Rom bed and it was replaced with a new bed.

32. By November 15, 2013, the Plaintiff's pressure ulcer had grown to 17 cm x 4 cm. The VA wound care nurse noted that "[i]t [was] also difficult to ascertain if depth is normal depth of gluteal fold or not. [The wound] [c]onsistently measure [sic] approximately 3 cm depth from tip of qtip to edge of gluteal fold." The ulcer was moist, had yellow drainage, and the edges longest to gluteal fold had dark brown adherent slough.

33. The wound care nurse also noted that the Plaintiff's constant stool incontinence would make wound healing impossible and believed that Plaintiff would need a diverting colostomy in order for his wounds to heal. No such diverting colostomy was performed until December 20, 2013.

34. The wound care nurse also noted that the continual rotation of total support bed was not sufficient for the Plaintiff's wounds and recommended the Plaintiff be manually turned at a minimum every two hours from side to side only.

35. On November 18, 2013, the Zassi stool collector was finally removed.

36. That same day, the VA wound nurse ordered that the Plaintiff receive an excel care bariatric specialty bed to replace the improperly working Hill-Rom bed. However, the new bed did not clear BioMed and was not utilized.

37. By November 21, 2013, the Plaintiff's pressure ulcer was unstageable, measuring 7.5 cm x 4.0 cm on left side of the gluteal fold and 6.0 cm x 3.0 cm on right side of the gluteal fold.

38. That same day, the Plaintiff was discharged from the VA to Defendant Landmark's Hospital in Columbia, Missouri for ventilator weaning and the completion of his antibiotic therapy.

39. Plaintiff was admitted to Landmark under the care of Defendant Dr. Guntur, who ordered for dressing changes as needed for the Plaintiff's gluteal pressure ulcer. Dr. Guntur also ordered that Plaintiff receive a senna/docusate laxative tablet twice a day.

40. Upon admission, the Plaintiff's gluteal pressure ulcer measured 8 cm x 2 cm x 6 cm and had 100% eschar. The Plaintiff also had constant stool contamination of the wound. The Landmark wound care nurse ordered that Plaintiff receive treatment of the application of Aguacel or Mepilex to be changed as needed or when soiled.

41. On November 25, 2013, Dr. Guntur noted in his progress note to discontinue Plaintiff's laxatives, however, no order was written. Plaintiff then received 26 additional laxative doses until December 8, 2013 when an order was finally entered to discontinue Plaintiff's laxatives, resulting in further stool contamination of Plaintiff's wounds.

42. By November 25, 2013, the Plaintiff's gluteal pressure ulcer was 7 cm x 2 cm x 6 cm in size with 100% eschar. The Plaintiff's wound had constant stool exposure requiring the placement of a rectal tube.

43. On November 29, 2013, the patient was transported to the VA general surgery clinic for debridement of his gluteal pressure ulcer.

44. After the procedure, the Plaintiff was transferred back to Landmark Hospital.

45. By December 3, 2013, the Plaintiff's gluteal wound was 8 cm x 2 cm x 8 cm with 50% granulation and 50% slough. The wound had progressed to stage IV and now the wound

was so deep the Plaintiff's tendon was exposed. The Plaintiff's wound continued to get worse due to frequent stool exposure.

46. Despite this declining condition, the Plaintiff's treatment was not changed.

47. By December 10, 2013, the Plaintiff's gluteal ulcer measured 6 cm x 2 cm x 8 cm. The wound bed was covered in slough and had copious amounts of drainage. The Plaintiff was incontinent of stool and was unable to maintain the rectal tube.

48. Despite these conditions, the Landmark physicians ordered that Plaintiff not receive a diverting colostomy at that time.

49. On December 11, 2013, the Plaintiff was transported to the VA general surgery clinic for debridement of the gluteal ulcer. The Plaintiff was then transported back to Landmark.

50. By December 16, 2013, the Plaintiff's ulcer measured 13 cm x 5 cm x 10 cm, had a foul odor, copious drainage, and possible bone exposure.

51. On December 18, 2013, Dr. Guntur noted that the Landmark team was not equipped to handle the Plaintiff's worsening pressure ulcer. At that point, Dr. Guntur requested that the Plaintiff be admitted to the VA hospital on an in-patient basis.

52. That same day, the Plaintiff was again transferred to the VA general surgery clinic for debridement of the worsening ulcer.

53. On December 20, 2013, the Plaintiff underwent surgery to debride the necrotizing fasciitis that had developed in his open pressure ulcer wound. During that same surgery, the Plaintiff underwent an open sigmoid colostomy to divert stool from contacting the wound.

54. By January 6, 2014, the Plaintiff's pressure ulcer wound measured 30 cm wide x 21 cm tall. The depth on the right side of the wound was 10 cm with 10 cm of undermining on

9

the inferior aspect of the wound. The left side of the wound was 8 cm deep with 8 cm of undermining of the superior aspect of the wound.

55. That same day, the Plaintiff underwent another surgery to debride the necrotizing fasciitis of the sacral area. The Plaintiff's also received wound vac for the pressure ulcer wound.

56. By January 9, 2014, it was determined that the Plaintiff's prior end sigmoid colostomy operation had retracted. The Plaintiff then underwent a transverse loop colostomy surgery. During that surgery, the wound vac was inspected and found to have purulent debris. The wound vac was then removed and the wound was debrided and packed with sterile dressing.

57. On January 15, 2014, the Plaintiff was discharged from the VA to Kindred Hospital for future treatment of his pressure ulcers.

## COUNT I
## (MEDICAL NEGLIGENCE v. DEFENDANT USA)

58. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows.

59. Defendant USA, through the VA and its employees and agents, owed to Plaintiff a legal duty to exercise that degree of skill and learning ordinarily exercised by members of their respective professions under the same or similar circumstances.

60. Defendant USA, through the VA and its employees and agents, breached its legal duty to Plaintiff and was thereby negligent in one or more of the following respects:

   a. Negligently and carelessly failing to properly assess the Plaintiff's risks for developing pressure ulcers upon admission;

   b. Negligently and carelessly failing to prevent the development of Plaintiff's pressure ulcers once he was admitted to the VA;

   c. Negligently and carelessly failing to communicate the presence or severity of Plaintiff's pressure ulcers once they had developed;

d. Negligently and carelessly failing to assess, treat, intervene, monitor, and prevent the progression of Plaintiff's pressure ulcer;

e. Negligently and carelessly failing to rotate or move Plaintiff in his hospital bed to prevent the development pressure ulcers and the progression of Plaintiff's gluteal pressure ulcer after it had developed;

f. Negligently and carelessly failing to obtain the appropriate medical equipment, including a fully functioning Hill-Rom hospital bed with continuous rotation and/or LAL function and/or a bariatric Exce; bed in order to prevent the progression of Plaintiff's pressure ulcer;

g. Negligently and carelessly failing to timely perform a diverting colostomy to prevent stool contamination of the wounds;

h. Negligently and carelessly failing to remove the Zassi stool collector after it was determined that Plaintiff's wound was still being contaminated with stool and the Zassi stool collector was not effective in preventing contamination of the pressure ulcer.

i. Negligently and carelessly failing to request medical consultations to address Plaintiff's pressure ulcer;

j. Negligently and carelessly failing to perform and measure up to the requisite standards of care required and observed by health care providers and further particulars presently unknown to Plaintiff, but which is verily believed and alleged will be disclosed upon proper discovery procedures in the course of this litigation.

61. As a direct and proximate result of the carelessness and negligence of the Defendants, Plaintiff has suffered harm, injury and damage in the following particulars:

a. Plaintiff has been required to undergo multiple painful medical and surgical treatments and incurred the expense of those treatments;

b. Plaintiff will incur medical expenses in the future;

c. Plaintiff has incurred in the past and will incur in the future pecuniary harm including lost earnings and lost earning capacity;

d. Plaintiff has suffered from in the past, and will continue to suffer in the future from pain, suffering, mental anguish, inconvenience, physical impairment, disfigurement, and loss of capacity to enjoy life;

11

WHEREFORE, plaintiffs pray for judgment against defendant in an amount that is fair and reasonable, for their costs herein incurred and for such other and further relief as this Court deems just and appropriate.

## COUNT II
## (MEDICAL NEGLIGENCE v. DEFENDANTS LANDMARK AND LMS)

62. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows.

63. Defendants, by and through their agents and employees, owed to Plaintiff a legal duty to exercise that degree of skill and learning ordinarily exercised by members of their respective professions under the same or similar circumstances.

64. Defendants, by and through their agents and employees, breached their legal duty to Plaintiff and were thereby negligent in one or more of the following respects:

    a. Negligently and carelessly failing to assess the Plaintiff's risks for developing or progression of existing pressure ulcers upon admission;

    b. Negligently and carelessly failing to prevent the development of Plaintiff's pressure ulcer once he was admitted to Landmark Hospital;

    c. Negligently and carelessly ordering and administering laxative medications for Plaintiff despite being incontinent of stool and repeated stool exposure to Plaintiff's pressure ulcer;

    d. Negligently and carelessly failing to ensure appropriate orders were entered, received, and administered to prevent the continued use of laxatives in Plaintiff given his incontinence of stool and repeated stool exposure to Plaintiff's pressure ulcer;

    e. Negligently and carelessly failing to communicate the presence or severity of Plaintiff's pressure ulcer once it had developed;

    f. Negligently and carelessly failing to assess, treat, intervene, monitor, and prevent the progression of Plaintiff's pressure ulcer;

    g. Negligently and carelessly failing to rotate or move Plaintiff in his hospital bed to prevent the development pressure ulcers and the progression of Plaintiff's gluteal pressure ulcer after it had developed;

      h.      Negligently and carelessly failing to timely perform or request a diverting colostomy to prevent stool contamination of the wounds;

      i.      Negligently and carelessly failing to request medical consultations to address Plaintiff's pressure ulcer;

      j.      Negligently and carelessly failing to perform and measure up to the requisite standards of care required and observed by health care providers and further particulars presently unknown to Plaintiff, but which is verily believed and alleged will be disclosed upon proper discovery procedures in the course of this litigation.

65. As a direct and proximate result of the carelessness and negligence of the Defendants, Plaintiff has suffered harm, injury and damage in the following particulars:

      a.      Plaintiff has been required to undergo multiple painful medical and surgical treatments and incurred the expense of those treatments;

      b.      Plaintiff will incur medical expenses in the future;

      c.      Plaintiff has incurred in the past and will incur in the future pecuniary harm including lost earnings and lost earning capacity;

      d.      Plaintiff has suffered from in the past, and will continue to suffer in the future from pain, suffering, mental anguish, inconvenience, physical impairment, disfigurement, and loss of capacity to enjoy life;

WHEREFORE, plaintiffs pray for judgment against defendant in an amount that is fair and reasonable, for their costs herein incurred and for such other and further relief as this Court deems just and appropriate.

## COUNT III
## (MEDICAL NEGLIGENCE v. DEFENDANT DR. GUNTUR)

66. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows.

67. Defendant owed to Plaintiff a legal duty to exercise that degree of skill and learning ordinarily exercised by members of his profession under the same or similar circumstances.

68. Defendant breached his legal duty to Plaintiff and was thereby negligent in one or more of the following respects:

   a. Negligently and carelessly failing to assess the Plaintiff's risks for developing or progression of existing pressure ulcers upon admission;

   b. Negligently and carelessly failing to prevent the development of Plaintiff's pressure ulcer once he was admitted to Landmark Hospital;

   c. Negligently and carelessly ordering and administering laxative medications for Plaintiff despite being incontinent of stool and repeated stool exposure to Plaintiff's pressure ulcer;

   d. Negligently and carelessly failing to ensure appropriate orders were entered, received, and administered to prevent the continued use of laxatives in Plaintiff given his incontinence of stool and repeated stool exposure to Plaintiff's pressure ulcer;

   e. Negligently and carelessly failing to communicate the presence or severity of Plaintiff's pressure ulcer once it had developed;

   f. Negligently and carelessly failing to assess, treat, intervene, monitor, and prevent the progression of Plaintiff's pressure ulcer;

   g. movement of Plaintiff in his hospital bed to prevent the development pressure ulcers and the progression of Plaintiff's gluteal pressure ulcer after it had developed;

   h. Negligently and carelessly failing to timely perform or request a diverting colostomy to prevent stool contamination of the wounds;

   i. Negligently and carelessly failing to request medical consultations to address Plaintiff's pressure ulcer;

   j. Negligently and carelessly failing to perform and measure up to the requisite standards of care required and observed by health care providers and further particulars presently unknown to Plaintiff, but which is verily believed and alleged will be disclosed upon proper discovery procedures in the course of this litigation.

69. As a direct and proximate result of the carelessness and negligence of the Defendants, Plaintiff has suffered harm, injury and damage in the following particulars:

   a. Plaintiff has been required to undergo multiple painful medical and surgical treatments and incurred the expense of those treatments;

14

Case 2:15-cv-04265-NKL   Document 1   Filed 11/20/15   Page 14 of 15

     b.     Plaintiff will incur medical expenses in the future;

     c.     Plaintiff has incurred in the past and will incur in the future pecuniary harm including lost earnings and lost earning capacity;

     d.     Plaintiff has suffered from in the past, and will continue to suffer in the future from pain, suffering, mental anguish, inconvenience, physical impairment, disfigurement, and loss of capacity to enjoy life;

WHEREFORE, plaintiffs pray for judgment against defendant in an amount that is fair and reasonable, for their costs herein incurred and for such other and further relief as this Court deems just and appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL FOR HIS CLAIMS SET FORTH IN COUNT II – MEDICAL NEGLIGENCE v. DEFENDANTS LANDMARK OF HOSPITAL OF COLUMBIA, LLC AND LANDMARK MANAGEMENT SERVICES, LLC; AND COUNT III – MEDICAL NEGLIGENCE V. DEFENDANT VAMSI P. GUNTUR, M.D.**

Respectfully Submitted,

FOWLER PICKERT, LLC

By: */s/ Ryan Fowler*
Ryan Fowler MO# 56918
Thomas Pickert MO #58262
One Hallbrook Place
11150 Overbrook Rd, Suite 350
Leawood, KS 66211
Ph: 913.661.9600
Fax: (816) 817-1989
ryan@fpinjurylaw.com
tom@fpinjurylaw.com

ATTORNEYS FOR PLAINTIFF